## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Heidi A., | Civ. No. 21-944 (SRN/BRT) |
| Plaintiff, | |
| v. | |
| Kilolo Kijakazi, | REPORT AND |
| Acting Commissioner of Social Security, | RECOMMENDATION |
| Defendant. | |

---

James H. Greeman, Esq., Greeman Toomey, counsel for Plaintiff.

Linda H. Green, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. This matter is before the Court on the parties' cross–motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). For the reasons stated below, this Court concludes that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record. Therefore, this Court recommends that Plaintiff's motion be denied and Defendant's motion be granted.

## BACKGROUND

Plaintiff is a 53-year-old woman. Following high school, she pursued an associate's degree in business. (Tr. 50–51.) Between 2014 and 2016, Plaintiff worked as

a Certified Medical Assistant for Carthage Residential, and held a similar position with Bristol Care. (Tr. 51–52.) Prior to working in these positions, Plaintiff worked as an agent at Systems and Services, a collection agency that dealt primarily with car loans. (Tr. 53.) Plaintiff has not worked since November 20, 2018. (Tr. 19.)

On November 20, 2018, Plaintiff filed an application for disability; she alleges that same day as her disability onset date.[1] (Tr. 19, 46, 209.) Her claim for disability is based on the following impairments: bilateral knee degenerative joint disease, status post total right knee arthroplasty on March 20, 2010, and total left knee arthroplasty on November 26, 2019; bilateral shoulder degenerative joint disease, status post left rotator cuff repair; lumbar degenerative disc disease; pseudoseizures; generalized anxiety disorder; major depressive disorder; borderline personality disorder; and learning disorders.[2] (Tr. 21.)

Plaintiff's disability claim was denied both initially on March 14, 2019 (Tr. 10–113), and on reconsideration on August 29, 2019. (Tr. 116–37.) Plaintiff requested a hearing before an ALJ, which was granted and held on July 30, 2020. (Tr. 39–73) The ALJ issued his decision on September 2, 2020, concluding that Plaintiff was not disabled as defined in the Social Security Act. (Tr. 19–33.) On March 1, 2021,

---

[1]   Plaintiff previously applied for benefits alleging an earlier disability onset date, and an ALJ determined that Plaintiff was not disabled during the relevant time period ending June 15, 2018, the date of the ALJ's decision. (Tr. 74 – 95.)

[2]   Only Plaintiff's physical impairments related to standing or walking are at issue in this appeal.

the ALJ's decision became the final decision of the Commissioner when Plaintiff's appeal was denied by the Appeals Council. (Tr. 5–10); 20 C.F.R. § 404.981.

Plaintiff initiated judicial review with this Court on April 7, 2021. (*See* Doc. No. 1, Compl.) The administrative record in this matter was filed on August 30, 2021. (Doc. No. 14.) The parties' cross-motions for summary judgment are now before this Court for consideration. (Doc. Nos. 15, 17.)

## DISCUSSION

### I.  Standard of Review

Congress established the standards by which social security disability insurance benefits may be awarded. A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such severity [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a); *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant demonstrates that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residential functional capacity [("RFC")] to do other kinds of work, and, second that other work

3

exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

This Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). Substantial evidence in the record may support two conflicting outcomes, creating a "zone of choice" in which the ALJ may exercise discretion to grant or deny benefits. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). This Court will not overturn an ALJ's determination if it falls within that zone, "even if we might have weighed the evidence differently." *Id.* at 939. If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## II.  The ALJ's Decision

Following the five-step evaluation set forth in 20 C.F.R. § 404.1520(a),[3] and considering the entire administrative record, the ALJ issued his decision denying Plaintiff's claim for benefits on September 2, 2020. (Tr. 19–33.) In his decision, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with some qualifications:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except frequently reaching overhead bilaterally, climbing ramps and stairs occasionally, never climbing ladders, ropes, or scaffolds, occasionally balancing on narrow, slippery and erratically moving surfaces, stooping frequently, kneeling, crouching and crawling occasionally, performing simple, routine and repetitive tasks that are not performed at a production rate pace such as that found in assembly-line work, occasional interactions with co-workers and supervisors, and no more than incidental contact with the public.

(Tr. 29.) Based on Plaintiff's RFC, and based on testimony of the vocational expert, the ALJ found that Plaintiff would be unable to perform any past relevant work. (Tr. 31–32.)

The ALJ then considered whether there were other jobs in the national economy that Plaintiff could perform. Based on testimony from the vocational expert, the ALJ determined that an individual with Plaintiff's age, education, work experience, and RFC

---

[3] At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

would be able to work in occupations such as photocopy machine operator, mail clerk, and cleaner/housekeeper (Tr. 32–33.) Therefore, the ALJ found that Plaintiff was not disabled, as defined by the Social Security Act. (Tr. 33.)

### III. Plaintiff's Challenges to the ALJ's Decision

Plaintiff challenges the ALJ's RFC finding, asserting it was not based on substantial evidence. In particular, Plaintiff argues there is no evidence in the record to support the conclusion that she was capable of "light work" during the period under review and that there is a conflict between the ALJ's RFC determination that she was capable of light work and that she was also limited to occasional balancing. Light work generally requires the ability to stand and walk for up to six hours within an 8-hour workday. *See* Social Security Ruling ("SSR") 83-10 ("The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Plaintiff argues that including a limitation for "occasional balancing" in the RFC should place her within the less demanding sedentary work category because "occasionally" under SSR 96-9p means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an 8-hour workday. Based on this, Plaintiff argues that if one cannot balance for more than two hours in a workday, they cannot stand and/or walk to perform the demands of light work.

In addition, Plaintiff argues that even if ongoing benefits are not awarded, a closed period of benefits should be allowed, starting from her alleged onset date and ending on an appropriate date after healing from her bilateral knee surgeries.

### A. The ALJ's RFC determination is supported by substantial evidence

Plaintiff argues that the record does not support finding that she was capable of "light work." Plaintiff asserts that the ALJ relied on evidence that did not contain the full extent of Plaintiff's knee impairments when determining Plaintiff's physical RFC. She contends that when understanding the full extent of her knee impairments, her standing/walking capacity should limit her to sedentary work because she claims she cannot stand or walk for the six to eight hours required by the light work classification.

As part of her argument, Plaintiff points to the fact that the ALJ relied on the opinions provided by state agency physicians in March and May 2019 (*see* Tr. 131–32),[4] which were issued without complete information for the entire relevant disability period. However, it is evident from the limitations ultimately provided by the ALJ that the ALJ considered the entire record, and not just those opinions alone, because the ALJ provided *more* physical limitations in the determined RFC than those provided by these two state agency opinions. The state agency physicians opined that Plaintiff was capable of "light work" without qualification, whereas the RFC determined by the ALJ contains several limitations to the "light work" category of work.[5]

---

[4] The opinions referred to are the opinions issued by state agency physician James Stevenson, M.D., who reviewed Plaintiff's records and estimated she could stand or walk six hours a day and sit for six hours a day (Tr. 110–11), and James Greco, M.D., who also reviewed Plaintiff's records and agreed with Dr. Stevenson's opinion. (Tr. 131–32.) The ALJ cites to the exhibits containing these opinions. (Tr. 31 (citing Exs. B3A and B6A).) Both of these opinions were provided before Plaintiff's knee surgeries, which were in November 2019 and March 2020.

[5] The RFC includes limitations to perform light work as defined in 20 C.F.R § 416.967(b), but also adds the following physical limitations: frequently reaching

7

Plaintiff also argues that there is a conflict between the ALJ's RFC determination that she was capable of light work and that she was limited to occasional balancing. However, the "occasional balancing" limitation was not a limitation with regard to all balancing, but instead was a specific limitation for occasional balancing while "on narrow, slippery and erratically moving surfaces." (Tr. 29.) The limitation did not relate to the balancing required while standing or walking generally or when standing or walking on other more normal surfaces or level terrain. Therefore, there is no conflict with the ALJ's determination that Plaintiff can perform light work and the specific limitation regarding balancing that was provided.[6]

Furthermore, the medical evidence in the record supports finding a light restriction rather than sedentary as it relates to Plaintiff's standing or walking capabilities. For example, in July 2019, just a few months before Plaintiff's first knee surgery, David Anderson, MD, noted that the knee showed no bruising and minimal swelling, and the X-rays showed normal alignment, very low-grade degenerative changes, and no fractures. (Tr. 887.) Also in July 2019, David Edgerton, D.O., documented a lack of swelling, active range of motion, intact sensation, a stable knee, and a normal gait, and x-rays again showed no sign of fractures; at that time, he prescribed a knee brace. (Tr. 738–39.) Both

---

overhead bilaterally, climbing ramps and stairs occasionally, never climbing ladders, ropes, or scaffolds, occasionally balancing on narrow, slippery and erratically moving surfaces, stooping frequently, and kneeling, crouching and crawling occasionally. These limitations do not exist by default for the category of light work.

[6]   Defendant points out that according to the *Dictionary of Occupational Titles*, (4th ed. 1991), Appendix C, 1991 WL 688702, the three jobs identified by the vocational

doctors before and after knee surgery recommended physical therapy. And neither recovery took over 12 months, which is the period necessary to establish disability. In addition, Plaintiff's daily activities supported mobility consistent with a "light" work restriction; she reported independence for personal cares, daily meal preparation, household repairs, mowing, ironing, and cleaning. (Tr. 29, 272 (Function Report dated 1/10/19); *see also* Tr. 296 (Function Report dated 3/8/19) (indicating "no change since last report").) These records, among others, support the ALJ's decision that Plaintiff is capable of light work with the limitations provided in the determined RFC.

For the above reasons, and because the RFC provided by the ALJ in his decision is supported by substantial evidence in the record, the ALJ's determination should be affirmed.

### B.   Plaintiff is not entitled to a closed period of benefits

Alternatively, Plaintiff argues that, at a minimum, she is entitled to a closed period of benefits for the period between her alleged onset date and when she healed after her bilateral knee surgeries. For the reasons already sated above, the ALJ's RFC determination for the entirety of the relevant time period is supported by substantial evidence in the record, including the period leading up to Plaintiff's surgeries. And whether before or immediately after her surgeries, Plaintiff has not established a 12-month period that would have required a different RFC that would have resulted in a

---

expert that Plaintiff could perform, when considering the RFC provided, did not have any balancing requirements. (Doc. No. 18, Def.'s Mem. in Supp. of Mot for Summ. J. 5.)

finding of disability during that period.[7] For these reasons, Plaintiff is not entitled to benefits for a closed period.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 15) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Doc. No. 17) be **GRANTED**;

and

3. Judgment be entered accordingly.


Date: April 11, 2022                                                                *s/ Becky R. Thorson*
                                                                                                    BECKY R. THORSON
                                                                                                    United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[7] For example, the evidence reflects that approximately four weeks after her surgery on her left knee, Plaintiff's knee pain was low, she was able to fully extend her knee, her knee was stable, and it was noted that she was healing well. (Tr. 1013.)